**In re KELTON MOTORS INC., Debtor.**

**G. GLINKA, Esq., Trustee, Plaintiff,**

**v.**

**DARTMOUTH BANKING COMPANY, United Savers Acceptance Corp., and McNamara Motors, Inc., Defendants.**

**Bankruptcy No. 89–00255.**
**Adv. No. 89–0019.**

United States Bankruptcy Court,
D. Vermont.

Sept. 26, 1990.

J. McNally, III, Teachout, Brooks, Moore & McNally, Norwich, Vt., J. Bodoff, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for United Sav. Acceptance Corp. (USAC), Dartmouth Banking Co. (Dartmouth) and McNamara Motors, Inc. (McNamara), (collectively defendants).

J. Meyers, Jerome I. Meyers, P.C., White River Junction, Vt., for Kelton Motors Inc. (Kelton Motors).

M. Palmer, Glinka & Palmer, Middlebury, Vt., D. Lynch, Miller, Cleary & Faigant, Ltd., for G. Glinka, Trustee and (Trustee).

## MEMORANDUM OF DECISION DENYING MOTION TO DISMISS

CHARLES J. MARRO, Retired Bankruptcy Judge.

### TRUSTEE'S AMENDED COMPLAINT

On November 6, 1989, Trustee filed an Amended Complaint[1] for damages against Defendants on three counts: Count 1, "Bad Faith" under 11 U.S.C. § 303(i);[2] Count II, "Equitable Subordination" under 11 U.S.C. § 510(c);[3] and, Count III, violation of the "Automatic Stay" under 11 U.S.C.

---

1. Trustee's "Amended Complaint" is really a misnomer because its Trustee's first complaint on behalf of Kelton as a Chapter 7 debtor. Kelton Motors filed a verified complaint and verified amended complaint against Defendants in its capacity as a debtor-in-possession before its conversion to Chapter 7.

2. 11 U.S.C. § 303(i), **involuntary cases,** provides:
(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
(1) against the petitioners and in favor of the debtor for—
(A) costs; or
(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—
(A) any damages proximately caused by such filing; or
(B) punitive damages.

3. Section 510(c) of the Bankruptcy Code provides:
(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
(2) order that any lien securing such a subordinated claim be transferred to the estate.

§ 362(a)(1).[4]

Trustee's Count I for "Bad Faith" complains the filing of an involuntary petition by the Defendants was part of a conspiracy to undermine Kelton's pre-petition workout and to drive Kelton and others connected to Kelton out of business for Defendants' mutual benefit so McNamara, Kelton's competitor and one of the involuntary petitioners, could take over Kelton's auto and truck sales territory and coverup the faltering obligations from McNamara to USAC and Dartmouth. Additionally, Defendants tortiously interfered in Kelton's business relations by undermining Kelton's proposed sale of its trucking franchise to a third party that was related to Kelton. Defendants' actions resulted in the inability of Kelton to secure cash, credit, and caused Kelton to suffer drastic decline in sales, forcing Kelton to cease doing business and liquidate under Chapter 7, 11 U.S.C. §§ 101 *et seq.* Trustee also questions Defendants good faith in obtaining "three or more entities" under § 303(b)(1) when Defendants are interrelated, i.e., Dartmouth owns ⅓ of the capital stock of USAC and the primary stockholder and president of McNamara is also a director of Dartmouth. Trustee further complains McNamara did not qualify as one of the three entities under § 303(b)(1) because McNamara's claim of $39.64 was not overdue and represented a current balance on account at the time of the filing of the involuntary petition, and this fact could and should have been ascertained by Defendants and would have spared Kelton from the fall-out of the stigma of the bankruptcy. Trustee cites Defendants' interrelatedness as further evidence of their conspiracy to put Kelton and its principals out of business. Trustee challenges Defendants' good faith in the filing of the involuntary petition when simultaneously with the filing the involuntary petition against Kelton, Defendants also brought post-petition State Court actions against Kelton, Kelton's principles and others related to Kelton. Trustee says such concerted actions were in furtherance of Defendants' design to force Kelton to liquidate.

Trustee's Count II Equitable Subordination under 11 U.S.C. § 510(c) reiterates Count I's averments and adds Defendant USAC and Defendant Dartmouth represented in their involuntary petition that they held certain retail installment contracts from Kelton with recourse which were in default. Trustee alleged that USAC's president ignored the credit line limit imposed by USAC on Kelton and extended credit in excess of the authorized lending limits. Trustee says this is further evidence of Defendants' concerted action to drive Kelton out of business. Moreover, Trustee says USAC is responsible for its own loss because USAC's president encouraged the over-extension of credit. USAC and Dartmouth failed to act prudently to protect their respective interests by not supervising, inspecting or otherwise performing the necessary functions of a prudent floor plan financier. USAC and Dartmouth also failed to take any corrective action to prevent USAC's president from making unauthorized loans in excess of his credit limit authority. We gather from Trustee's complaint that Defendants' action in over extending credit is an evidentiary example of *inter alia,* Defendants' conspiracy to put Kelton and its related entities and principles out of business. Thus, Defendants engaged in inequitable conduct that encouraged Kelton to over-extend itself, conferred an unfair advantage on Defendants and resulted in the destruction and liquidation of Kelton's business to the injury of Kelton and Kelton's creditors.

Trustee's Count III Automatic Stay violation under 11 U.S.C. § 362(a)(1) reiterates

---

**4.** 11 U.S.C. § 362(a)(1), **Automatic stay,** provides in pertinent parts:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

the averments from Counts I and II and adds that after the filing of the involuntary petition against Kelton, USAC filed a State Court civil action against Kelton and others related to Kelton in violation of § 362. Trustee also says this is further evidence of Defendants putting Kelton and others related to Kelton out of business. Additionally, USAC deposed Carl E. Kelton, Sr., Shirley Kelton, Rose Temple, employees and others that are integral to Kelton without seeking relief from stay. Trustee also says the depositions were contrary to our Bench Order that no depositions or discovery were to be taken of Kelton and others related to Kelton before Kelton's 11 U.S.C. § 341 first meeting of creditors.

## CLAIMS OF THE PARTIES

### A. Defendants' Motion to Dismiss.

Defendants moved for a pre-answer dismissal of Trustee's Amended Complaint and submitted a "Memorandum of Law in Support of Motion of Defendants to Dismiss the Trustee's Amended Complaint." Defendants' Motion to Dismiss characterizes Trustee's Amended Complaint as nothing more than an reiteration of an original amended complaint by Kelton Motor's DIP's attorney which, in turn, was merely at Mr Kelton's direction in retaliation to Defendants' State Court litigation against Mr. Kelton, his friends and relatives.

Defendants attack Trustee's Bad Faith Count on three grounds.

First, Defendants claim it is not a core matter and, absent their consent, we lack subject matter jurisdiction over Trustee's Bad Faith count because it is "only tangentially related to matters concerning the administration of the estate." Moreover, Defendants say it is not core because Trustee's Bad Faith action really belongs in State Court because it consists of state causes of action including "twenty allegations mixing tortious interference, conspiracy, bad faith conduct and other non-identifiable causes of action."

Second, Defendants request a dismissal of Trustee's Bad Faith action on the ground that it fails to state a cause of action upon which relief can be granted.[5] Specifically, Defendants advance that before there can be money damages against them for a bad faith filing of an involuntary petition, the involuntary petition must be dismissed under 11 U.S.C. § 303(i) and Rules of Practice and Procedure in Bankruptcy Rule 1011.[6] In the instant case,

---

5. Although not cited by Defendants, we interpret this ground as a motion to dismiss under Rules of Bankruptcy Practice and Procedure Rule 7012(b)(6). Rules of Practice and Procedure in Bankruptcy Rule 7012(b), **Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings,** provides in pertinent parts:

 **(b) APPLICABILITY OF RULE 12(b)–(h) F.R.Civ.P.** Rule 12(b)–(h) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.
 1987 COMMITTEE NOTE
 The amendment to subdivision (b) requires a response to the allegation that the proceeding is core or non-core. A final order of judgment may not be entered in a non-core proceeding heard by a bankruptcy judge unless all parties expressly consent. 28 U.S.C. § 157(c).

F.R.Civ.P. 12(b)(6) states: **"(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted ..."

6. Rules of Practice and Procedure in Bankruptcy Rule 1011, **Responsive Pleading or Motion in Involuntary and Ancillary cases,** provides:
 (a) WHO MAY CONTEST PETITION. The debtor named in an involuntary petition or a party in interest to a petition commencing a case ancillary to a foreign proceeding may contest the petition. In the case of a petition against a partnership under Rule 1004(b), a nonpetitioning general partner, or a person who is alleged to be a general partner but denies the allegation, may contest the petition.
 (b) DEFENSES AND OBJECTIONS; WHEN PRESENTED. Defenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F.R.Civ.P. and shall be filed and served within 20 days after service of the summons, except that if service is made by

there was no such dismissal of the involuntary petition, thus, Trustee's Bad Faith count fails for want of a condition precedent of a dismissal. Moreover says Defendants, Kelton waived any right to seek monetary damages for the alleged bad faith filing of the involuntary petition because it consented to the entry of an order for relief by the voluntary Chapter 11 filing.

Defendants' third ground for dismissal of Trustee's Bad Faith action is based on Rules of Practice and Procedure in Bankruptcy Rule 7009.[7] Although Trustee does not use the term fraud in Count I, Defendants' characterize Count I as an unexpressed action for fraud because it uses terms such as "schemes," "conceal," "conspired," "tortiously interfered," "bad faith," and, "malicious intent." Defendants conclude that because Trustee failed to "spell out" the criteria necessary to properly plead "tortious interference" or "fraudulent conspiracy," then Trustee's Bad Faith action fails Rule 9's specificity requirements and, in turn, must be dismissed under Rule 12(b)(6).

Defendants seek a dismissal of Trustee's Count II for Equitable Subordination on the grounds it too fails to state a claim upon which relief may granted under Rule 12(b)(6). Specifically, Defendants say Trustee's allegations, at best, state that Defendants were merely negligent in their supervision and inspection of Kelton's inventory and finances, whereas equitable subordination requires allegation of fraud, illegality or a breach of fiduciary duty.

Defendants seek a dismissal of Trustee's Count III for violation of the Automatic Stay on the grounds it also fails to state a claim upon which relief may granted under Rule 12(b)(6). Factually, Defendants admit the Trustee's allegation that Kelton was a named defendant in the post-petition State Court action, however, Defendants advance the State Court filing was harmless in that they "have not proceeded against [Kelton] beyond the mere filing of a Complaint." Defendants also admit the State Court litigation names relatives, agents and friends of Kelton as defendants. Defendants further admit they have conducted post-petition State Court depositions of Kelton's officers and agents. Nevertheless, Defendants say they may continue their State Court action against such defendants and conduct any depositions of any entity or party that is not a bankruptcy debtor, because § 362's automatic stay applies only to Kelton and not to nonbankruptcy debtors/defendants.

### B. Trustee's Opposition to Defendants' Motion to Dismiss.

In anticipation of Defendants' Motion to Dismiss Trustee's Amended Complaint, Trustee filed a "Preliminary Memorandum in Opposition to Motion to Dismiss" on the same day of the Amended Complaint. Trustee's Preliminary Memorandum counters all of the grounds of Defendants' Motion to Dismiss with the exception of Defendants' Rule 9(b) objection. Trustee addressed Defendants' Rule 9(b) objection in "[Trustee's] Supplemental Memorandum Opposing Defendants' December 22, 1989 Motion to Dismiss."[8]

---

7. Rules of Bankruptcy Practice and Procedure Rule 7009(b) incorporates Federal Rules of Civil Procedure Rule 9(b). F.R.Civ.P. 9(b) states:

 **(b) Fraud, Mistake, Condition of Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

8. While Defendants' Motion to Dismiss this proceeding was pending, Defendants filed a "Motion to Grant Motion to Dismiss Amended Complaint." The basis of Defendants' Motion to Grant Motion is that Trustee had not submitted a responsive written memorandum in opposi-

publication on a party or partner not residing or found within the state in which the court sits, the court shall prescribe the time for filing and serving the response.

(c) EFFECT OF MOTION. Service of a motion under Rule 12(b) F.R.Civ.P. shall extend the time for filing and serving a responsive pleading as permitted by Rule 12(a) F.R.Civ.P.

(d) CLAIMS AGAINST PETITIONERS. A claim against a petitioning creditor may not be asserted in the answer except for the purpose of defeating the petition.

(e) OTHER PLEADINGS. No other pleadings shall be permitted, except that the court may order a reply to an answer and prescribe the time for filing and service.

Trustee says we have subject matter jurisdiction over its Bad Faith action because it arises as the result of Defendants' filing an involuntary petition against Kelton. Trustee also says its Bad Faith action is based, in part, on 11 U.S.C. § 303(i). Moreover, this proceeding is core to the extent Trustee's Bad Faith action alleges concerted interference with Kelton's business relations culminating in the filing of an involuntary petition because "it inextricably involves the Bankruptcy Code and administrative matters concerning the administration of the [Kelton's] estate under 11 U.S.C. § 157(b)(2)(A)."

Trustee's response to Defendants' request for a Rule 12(b)(6) dismissal of the Bad Faith action for failure to have an order of dismissal of the involuntary petition prior to the entry of Kelton's voluntary Chapter 11 Order for Relief, by noting that there was no waiver by the entry of the order for relief because Kelton Motor's DIP's attorney expressly reserved in Open Court its right to pursue Defendants for damages. Moreover, "[h]aving consented to the Order for Relief subject to its rights against the petitioning creditors, it would have been a futile gesture for the debtor to seek dismissal and to refile under Chapter 11." Trustee further appeals to our sense of equity in that a debtor should not be faced with the "Hobson's choice" of consenting under pressure to an order for relief and waive its bad faith action or of obtaining an order of dismissal when the damage has already been done and thereby waive the statutory time periods for exercising its various avoiding powers.

As for Defendants' request for a dismissal of Trustee's Bad Faith action on Rule 9(b) grounds, Trustee says the elements of conspiracy or motivation need not be alleged with particularity and that it is sufficient to plead the requisite state of mind in a general manner.

Assuming *arguendo* Rule 9(b) to be applicable, Trustee says it has alleged more than enough facts to support its Bad Faith Count, including: the $39.64 claim of McNamara, Kelton's competitor, was not overdue at the time McNamara joined the involuntary petition; a director of Dartmouth, one of the involuntary petitioning creditors, is the primary stockholder and president of McNamara; and, Defendants were engaged in various interrelated financial dealings and stood to gain by causing Kelton's failure. First, these facts tend to show a condition of Defendants' mind, *i.e.*, a bad faith conspiracy to drive Kelton out of business. Second, the Amended Complaint alleges, and case law clearly directs, that McNamara should have checked to see whether its claim was or was not overdue prior to joining the petition, instead, McNamara's joinder was not only ill advised but also done to put Kelton out of business for the purpose of gaining a competitive advantage and to bail itself out of its own financial difficulties with USAC and Dartmouth.

Trustee says we should reject Defendants' characterization of Trustee's § 510(c) action as "mere negligence." First, "mere negligence," is an improper characterization where the alleged facts are Defendants exceeded their lending limits, encouraged Kelton to become over-dependent on them, with the purpose of gaining an unfair advantage to the detriment of Kelton and Kelton's creditors. Second, outright fraud is not a prerequisite for inequitable conduct, rather injustice, unfairness, conduct that shocks the conscience of the court, or a pattern of inequitable conduct will suffice. Thus, Defendants' Rule 9(b) claim fails here as well. Lastly, Trustee suggests that rather than dismissal of Trustee's § 510(c) action, discovery is appropriate so that Trustee may find additional evidence of inequitable conduct that is obviously in the Defendants'

---

tion to Defendants' Memorandum in support of their Motion to Dismiss. Defendants' "Motion to Grant Motion to Dismiss Amended Complaint" is denied. Assuming *arguendo* a responsive memorandum was required under VLBR 9013, Trustee's Preliminary Memorandum suf-

fices, albeit submitted before the fact. Moreover, the Court has an independent duty to itself, to the bankruptcy estate and to its creditor to ascertain the merits of Defendants' Motion to Dismiss.

possession to support its § 510(c) Equitable Subordination.

Trustee says Defendants' admission that they had filed a post-petition State Court lawsuit against Kelton is enough withstand Defendants' request to dismiss Trustee's Automatic Stay Count III. Trustee encourages us to reject Defendants attempt to qualify the State Court filing by stating they have not taken any further action against Kelton. Trustee says Defendants' admission that it filed the post-petition State Court lawsuit against Kelton's related entities and principles, agents and officers and their conducting discovery of Kelton's principal shareholders, directors, and employee is not only evidence of a willful violation of the automatic stay, but also further evidence of Defendants' bad faith.

## C. Defendants' Response to Trustee's Opposition to Motion to Dismiss.

Defendants filed a post-hearing "Supplemental Memorandum Of Law In Support Of Motion Of Defendants To Dismiss The Trustee's Amended Complaint."

Defendants' Supplemental Memorandum reiterated their position that in order for the Trustee to have standing to prosecute a claim for bad faith filing of an involuntary petition, a dismissal of the involuntary petition is required.

Defendants' Supplemental Memorandum raised an additional ground for dismissal of Trustee's Bad Faith action under Rules of Practice and Procedure in Bankruptcy Rule 7008(a)(2).[9] Defendants say the Bad Faith count is inconsistent, confusing and fails to make clear whether it is a cause of action for bad faith or several causes of action, including: Bad faith; conspiracy; and/or, tortious interference with business relations or prospective or current contractual relations.

Defendants attempt to bolster their request for dismissal of Trustee's Equitable Subordination Count II with facts that appears to contradict Trustee's version of the facts. Defendants say they were financing consumer purchases of vehicles intending to be secured by liens on the customers' vehicles and that such loans could not "in any way constitute inequitable conduct as to [Kelton]." Defendants challenge Trustee's allegation that USAC and Dartmouth engaged in floor plan financing when it:

(I)is clear that they were in fact intending to lend money to the customers of [Kelton] on a recourse basis to [Kelton]. At no time did these Defendants lend money to [Kelton] nor did they have liens on [Kelton's] inventory. 'Floor plan' financing ... is inconsistent with the Trustee's allegations that the Defendants have liens on retail installment contracts ... The proofs of claim filed by USAC and Dartmouth which have the retail installment contracts attached, bear out the fact that their claims are not based on floor plan financing.

Defendants' Supplemental Memorandum, page 9 (footnotes omitted).

Lastly, Defendants' Supplemental Memorandum contests Trustee's factual assertion that § 362 was violated by Defendants when they, *inter alia*, ignored an open court ordered prohibition of any discovery of Mr. Kelton and others related to Kelton prior to the § 341 meeting of creditors, by directing us to take judicial notice of Kelton's bankruptcy case that the Bench Order moratorium on state court discovery arose in a different proceeding and applied to parties of which Defendants were not privy.

## ISSUES PRESENTED

A. Count I Bad Faith.

1. Whether this Court has Subject matter jurisdiction over Trustee's Bad Faith action against Defendants?

---

**9.** Rules of Practice and Procedure in Bankruptcy Rule 7008 makes F.R.Civ.P. Rule 8 applicable to adversary proceedings. F.R.Civ.P. Rule 8(a)(2) provides:
 (a) **Claims for relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitle to relief ...

a. Is this proceeding core, non-core related, or non-core and non-related?

b. If this is a non-core related proceeding, have Defendants nevertheless consented to our entry of a final order by their filing an involuntary petition against Kelton?

c. If this is a non-core related proceeding, have USAC and Dartmouth consented to our entry of a final order by their filing proof of claims in Kelton's Voluntary Chapter 7 Bankruptcy case?

2. If we have subject matter jurisdiction, must Trustee's Bad Faith action be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6) because a dismissal of the involuntary petition was not obtained prior to Trustee's Bad Faith action under 11 U.S.C. § 303(i)?

3. If we have subject matter jurisdiction and if the proceeding survives a Rule 12(b)(6) motion to dismiss for an alleged failure to meet a condition precedent of a dismissal prior to the bringing of a Bad Faith action under § 303(i), may Trustee's Bad Faith action be dismissed under F.R.Civ.P. Rules 8(a)(2) and/or 9(b)?

a. Does Trustee's Bad Faith Count meet Rule 9(b) and Rule 8(a)(2) requirements?

b. If Rule 9(b) applies and Trustee's Bad Faith count does not meet the requirements under Rule 9(b) and Rule 8(a)(2), nevertheless is a conforming amendment after discovery warranted rather than dismissal because plaintiff is a third party bankruptcy trustee and because the material facts and documents may be in possession of Defendants?

B. Count II Equitable Subordination.

1. Whether Trustee's Equitable Subordination under 11 U.S.C. § 510(c) states a claim upon which relief may be granted under F.R.Civ.P. Rule 12(b)(6)?

2. Is § 510(c) subject to the specificity requirements of F.R.Civ.P. Rule 9(b)? If so, isn't a conforming amendment appropriate after Defendants have interposed their answer and discovery has taken place, rather than dismissal, because Plaintiff is a Bankruptcy Trustee and a third party to the alleged facts giving rise to its § 510(c) action and because the supporting material facts and documents may be in possession of Defendants?

C. Count III Violation of Automatic Stay.

1. Whether § 362 is violated by Plaintiffs' filing a State Court action against a Debtor against whom Plaintiffs' had already filed an involuntary petition?

2. Whether § 362 is violated by Plaintiffs' filing of a State Court action against and/or conducting State Court depositions of bankruptcy debtor's non-debtor principles, employees, and/or relatives?

### DISCUSSION

A. Count I Bad Faith.

*1. Subject Matter Jurisdiction.*

A Rule 12(b)(1) challenge to our subject matter jurisdiction does not place the burden of proof upon the movant. Rather, the burden remains upon the party asserting we have jurisdiction by a preponderance of the evidence. Additionally, a Bankruptcy Court has the independent responsibility to make a 28 U.S.C. § 157(b)(3) [10] determination that this proceeding is or is not a "core" matter or otherwise "related to" the pending Title 11 case.

We are entitled to review not only the pleadings but also matters outside the pleadings, including affidavits and doc-

---

**10.** 28 U.S.C. § 157(b)(3), **Procedures,** provides:

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

uments before us, for competent evidence to resolve factual disputes about the existence of jurisdiction to hear an action. See, *Land v. Dollar*, 330 U.S. 731, 735, n. 4, 67 S.Ct. 1009, 1011, n. 4, 91 L.Ed. 1209 (1947) overruled on other grounds, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986); 2A *Moore's Federal Practice*, paragraph 12.-07[2.1], at pp. 12–45–12–46 (2d Ed.1989). In the context of an adversary proceeding, we are entitled to review the bankruptcy case records and pleadings as well as the record of the adversary proceeding.

 Although evidentiary matters outside the pleadings were submitted by Defendants, it does not convert their Rule 12(b)(1) Motion to Dismiss into a motion for summary judgment under F.R.Civ.P. 56 as made applicable to adversary proceedings by Rules of Practice and Procedure in Bankruptcy Rule 7056. A conversion to a Rule 56 motion is proper under Rule 12(b)(6) when evidence outside of the pleadings is considered and not excluded by the Court, not under Rule 12(b)(1). *Kamen, supra* at 1011.

The United States Supreme Court's holding in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and later cases warn of constitutional problems caused by Article I Courts overreaching their jurisdictional limitations.

28 U.S.C. § 1334 [11] and 28 U.S.C. § 157,[12] respectively define the source of our sub-

---

11. 28 U.S.C. §§ 1334(a) and (b), **Bankruptcy Cases and Proceedings,** provide:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

12. 28 U.S.C. § 157. **Procedures,** provides in part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law....

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall

ject matter jurisdiction and authority to enter orders. Four categories are provided by this jurisdictional scheme:

a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11.

*Taxel v. Commercebank (In re World Financial Services Center, Inc.),* 64 B.R. 980, 982, 14 BCD 1306, 15 CBC.2d 836, 838

not be subject to the mandatory abstention provisions of section 1334(c)(2).

. . . . .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

13. VLB Rule 7012, ABSTENTION AND CORE AND NON–CORE MATTERS, provides in pertinent parts:

(a) **Matters Determined by the Bankruptcy Judges.**

(1) Subject to subsection (a)(3)(B) hereof, all cases under Title 11 of the United States Code, and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the Bankruptcy Judge. It is the intention of this Court that the Bankruptcy Judge be given the broadest possible authority to administer cases properly within his/her jurisdiction, and this Rule shall be interpreted to achieve this end.

(2) Pursuant to 28 USC § 157(b)(1), the Bankruptcy Judge shall hear and determine all

(Bkrtcy.S.D.Cal.1986). *See, Allis–Chalmers Corp. v. Borg–Warner Acceptance Corp. (In re Dr. C. Huff Co., Inc.),* 44 B.R. 129, 134, 11 CBC.2d 1039, 40 UCCRS 284 (Bkrtcy.W.D.Ky.1984) (three classes of legal controversies: 1. core cases; 2. non-core related cases; and 3. non-core unrelated cases).

■ Under 28 U.S.C. § 157(a), the District Court may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 may be referred to Bankruptcy Judges for the District. VLBR 7012 [13] con-

cases under Title 11 and all core proceedings (including those delineated in 28 USC § 157(b)(2)) arising under Title 11, or arising in a case under title 11, and shall enter appropriate orders and judgments, subject to review under 28 USC § 158.

(3) The Bankruptcy Judge shall hear all non-core proceedings related to case under Title 11.

(A) **By Consent:** With the consent of the parties, the Bankruptcy Judge shall conduct hearings and enter appropriate orders or judgments in the proceeding, subject only to review under 28 USC § 158.

(B) **Absent Consent:** Absent consent of the parties, the Bankruptcy Judge shall conduct hearings and file proposed findings of fact and conclusions of law and a proposed order or judgment with the Bankruptcy Clerk. The Bankruptcy Judge may also file recommendations concerning whether the review of the proceedings should be expedited, and whether or not the basic bankruptcy case should be stayed pending District Court termination of the noncore proceedings. The Bankruptcy Clerk shall mail copies of these documents to the parties. Within ten (10) days of mailing, any party to the proceedings may file objections with the Bankruptcy Clerk. Any final order or judgment shall be issued by the District Judge after considering the Bankruptcy Judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected. (Review of interlocutory orders shall be had following the procedure specified in subsection (d) hereof).

(C) **Signifying Consent:** At time of pre-trial, or earlier, upon motion of a party in interest, the parties shall:

(i) Stipulate in writing that the proceeding is a core proceeding;

(ii) Stipulate in writing that the proceeding is a non-core proceeding, but that the Bankruptcy Judge can determine the matter and enter a final order subject to review pursuant to 28 USC § 158;

(iii) Stipulate that the proceeding is a non-core proceeding, the Bankruptcy Judge finds

tains the Bankruptcy Court's reference for the District of Vermont.

The distinction between core and non-core is important in at least one respect, that being a Bankruptcy Court's ability to enter a final order. 28 U.S.C. §§ 157(c)(1) and (2) provide that a Bankruptcy Judge may hear non-core proceedings that are otherwise related to a case under Title 11, but may not enter a final order or judgment without the consent of the parties. Instead, the Bankruptcy Judge must submit proposed findings of fact and conclusions of law for the District Court's *de novo* review. In a core matter we may enter a final order. In some pro-

the matter is a non-core proceeding, and at least one party refuses to have the Bankruptcy Judge determine the matter; or

(iv) State that there is no agreement between the parties as to whether the proceeding is a core or non-core proceeding and at least one party refuses to have the Bankruptcy Judge determine the matter if it is determined to be a non-core proceeding.

Official Vermont Local Bankruptcy Form No. 14, or an equivalent order may be used at the pre-trial conference.

**(b) Matters To Be Heard and Determined or Tried by District Judges.**

**(1) Motions to Withdraw Cases and Proceedings to the District Court.** The District Judge shall hear and determine any motion to withdraw in any case or proceeding pursuant to 28 USC § 157(d). The District Judge may refer the case of proceeding back to the Bankruptcy Judge for proposed findings of fact and conclusions of law and a proposed order of judgment in accordance with the procedures set forth in subsection (a)(3)(B) of this Rule. All such motions shall be filed only with the Bankruptcy Clerk who will forward the motion to the District Court. The Bankruptcy Judge may prepare a written recommendation concerning the effect of the withdrawal upon the disposition of the underlying bankruptcy petition and whether the hearing of the motion should be expedited;

**(2) Trials of Personal Injury and Wrongful Death Tort Claims.** In proceedings in which a personal injury or wrongful death tort claim is required under 28 USC § 157(b) to be tried in a District Court, the proceeding shall be administered by the Bankruptcy Judge until it is ready for a final pre-trial conference before a District Judge. The Bankruptcy Judge may prepare a written recommendation concerning the effect of the proceeding upon the disposition of the underlying bankruptcy petition and whether the trial of the proceeding should be expedited, copies of which shall be mailed to parties in accordance with the procedures set forth in subsection (a)(3)(B) of this Rule. The District Judge shall conduct the trial of the proceeding.

**(3) Motions.**

(A) The Bankruptcy Judge shall make recommendations concerning:

(i) a motion by a party under 28 USC § 1334(c) for abstention;

(ii) a motion by a party under 28 USC § 1452(b) for remand; and

(iii) a motion by a party under 28 USC § 157(b)(5) for a transfer of venue of personal injury or wrongful death tort claims.

(B) All such motions shall be filed only with the Bankruptcy Clerk and shall first be heard by a Bankruptcy Judge. The Bankruptcy Judge shall make a recommendation concerning the disposition of the motion, copies of which shall be mailed to the parties in accordance with the procedures set forth in subsection (a)(3)(B) of this Rule. The District Judge may accept, reject, or modify, in whole or in part, the recommendation of the Bankruptcy Judge and shall determine the disposition of the motion.

. . . .

**(e) Appeals to the District Court.** All appeals in core matters, in non-core matters heard by consent, and appeals of interlocutory orders entered by the Bankruptcy Judge in non-core matters heard by the Bankruptcy Court under subsection (a)(3)(B) of this Rule shall be taken in the same manner as appeals in civil proceedings, generally are taken to the Courts of Appeals from the District Courts, and in the time provided by the Rules of Practice and Procedure in Bankruptcy.

**(f) Filing of Papers.** While a case or proceeding is pending before a Bankruptcy Judge, or prior to the docketing of an appeal in the District Court as set forth in the Rules of Practice and Procedure in Bankruptcy, all pleadings and other papers shall be filed with the Bankruptcy Clerk. After the case or non-core proceeding is assigned to a District Judge, or after the District Clerk has given notice to all parties of the date on which the appeal was docketed, all pleadings shall bear a civil case number in addition to the bankruptcy case number(s) and shall be filed only with the District Court Clerk.

**(g) Submission of Files to the District Court; Assignment To District Judges.** After the expiration of the time for filing objections under subsection (a)(3)(B) hereof, upon receipt of any order by a District Judge pursuant to 28 USC § 157(d), or upon the docketing of an appeal in the District Court as specified in subsection (e) hereof, the Bankruptcy Clerk shall submit the file for the case or proceeding to the District Court Clerk. The District Court Clerk shall affix a civil number to each submission, and shall make the assignment to a District Judge in accordance with the usual system for assigning civil cases.

ceedings, we may determine the circumstances are appropriate for us to determine that the parties consented to the entry of a final order despite the absence of an express consent.

The distinction between core and non-core should not be confused with our power to hear the matter. We have subject matter jurisdiction regardless of its core or non-core status. *See, In re Wefco, Inc.,* 97 B.R. 749, 19 BCD 423 (E.D.N.Y. 1989). The core or non-core distinction affects only our ability to enter a final order.

"Core" is not defined, nor is it limited to the fifteen nonexclusive categories contained in 28 U.S.C. § 157(b)(2). Some Courts have confined themselves to a narrow approach in ascertaining the scope of what matters may be core, while others have taken a more expansive approach. *See, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),* 56 B.R. 927, 932, 14 CBC.2d 429, 13 BCD 1304 (Bkrtcy.E.D.N.C.1986) (listing of representative cases within the two camps). It is now clear in our Circuit the expansive approach applies. *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1398–1399, 20 BCD 139, 22 CBC.2d 729 (2d Cir.1990) *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990).

The mere characterization of an adversary proceeding within the core terms of 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive on whether the proceeding is core. *Taxel v. Commercebank (In re World Financial Services Center, Inc.),* *supra,* 64 B.R. at 986, 15 CBC.2d at 843 (Bkrtcy.S.D.Cal.1986). For example, matters that are only tangentially related to the administration of the bankruptcy estate, may, in appropriate cases, be non-core related proceedings. *See, e.g., Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir.1987). Moreover, just because the resolution of some of Trustee's action may turn on the application of State law, this will not, *ipso facto,* turn this adversary proceeding into non-core proceeding. 28 U.S.C. § 157(b)(3); *Ben Cooper, Inc. v. The*

*Insurance Company of the State of Pennsylvania (In re Ben Cooper), supra,* 896 F.2d at 1400 (2d Cir.1990); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y. 1986); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605, 609, 12 BCD 536, 11 CBC.2d 1216 (C.D.Cal.1984).

We are ever mindful of *Marathon's* plurality holding and Article III proscriptions:

[T]he 'adjunct' bankruptcy courts created by the Act [1978, 28 U.S.C. § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel* [*Crowel v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)] or *Raddatz* [*U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)].

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (brackets supplied for clarity). As one Court interpreted *Marathon:*

[T]he constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate.

*Lessor v. A–Z Associates (In re Lion Capital Group),* 46 B.R. 850, 856, 12 BCD 840, 12 CBC.2d 59 (Bkrtcy.S.D.N.Y.1985), *aff'd,* 63 B.R. 199 (S.D.N.Y.1985). *See also, Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582, 11 BCD 529, 9 CBC.2d 910 (2d Cir.1983); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Satelco,* 58 B.R. 781, 786, 14 BCD 201, 14 CBC.2d 487 (Bkrtcy.N.D.Tex.1986).

*Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., related proceedings).... [I]n no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The Court's invalidation of the jurisdictional

grant was on separability grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1580, 11 BCD 529, 9 CBC.2d 910 (2d Cir.1983) (citation and footnote omitted).

As for the Bankruptcy Court's related jurisdiction, in *Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341, 11 BCD 728, 10 CBC.2d 782 (2d Cir.1983), our Circuit Court of Appeals applied a narrow scope of "related to" jurisdiction to require a showing of any "significant connection" to the debtor's bankruptcy. In *Turner*, a Chapter 11 debtor had claimed as exempt a contingent cause of action for conversion against her landlord. Afterwards, she filed a complaint against the landlord in Bankruptcy Court. The District Court found jurisdiction to be "related to" under the then existing Emergency Resolution,[14] as within the definition of " 'those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court.' " *Id.*, 724 F.2d at 340 (*quoting* District Court). After noting that the debtor had already exempted the action and pursued it in her own name, the Second Circuit reversed and instructed the District Court to dismiss debtor's complaint for want of jurisdiction because:

> There is no suggestion that the proceeds would be turned over to the trustee, or accounted for to him, and the judgment below orders Ermiger [landlord] to pay damages directly to her [debtor]. Failure to recover on the claim could not increase her exemption claim under § 522(d) of the Code since her exemptions had already exhausted the estate. On these facts, there is no showing that Turner's [debtor's] action against Ermiger had any *'significant connection'* with her bankruptcy case. It therefore falls outside the scope of § 1471(b),[15] which allows the district courts to con-

duct civil proceedings 'related to' cases under Title 11.

*Id.*, 724 F.2d at 341 (emphasis supplied). *See, Gordon v. Shirley Duke Associates, A.P.I. (In re Shirley Duke Associates)*, 611 F.2d 15, 18, 21 CBC.2d 857 (2d Cir.1979) (under Bankruptcy Act of 1898, as amended, Bankruptcy Court has no jurisdiction to decide controversies between third parties that do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy).

The Third Circuit provides us with the popular definition of a "related to" jurisdiction that appears to be broader in scope than *Turner's* "significant connection:"

> The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ...* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994, 12 BCD 285, CCH BLR Para. 70002 (3d Cir.1984) (emphasis in original). *Accord, Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 802, 13 BCD 599, CCH BLR Para. 70637 (3d Cir.1985). *See, Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457, CCH BLR Para. 72420 (9th Cir.1988); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93, 17 CBC.2d 743, CCH BLR Para. 71955 (5th Cir.1987); *Elscint, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.)*, 813 F.2d 127, 131, n. 2, 17 CBC.2d 230, CCH BLR Para. 71695 (7th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786,

---

**14.** The Emergency Resolution adopted by order in the Northern District for the District of New York dealt with the *Marathon, supra* problems. 724 F.2d at 340. *See, In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir.1983) (upholding similar rule of the Southern District for the District of New York).

**15.** 28 U.S.C. § 1471 was the forerunner of present day 28 U.S.C. § 1334.

CCH BLR Para. 71616 (8th Cir.1987). *See also, A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.,),* 788 F.2d 994, 1002 n. 11, 14 BCD 752, 15 CBC.2d 235, CCH BLR 71094 (4th Cir.1986) *(dicta) cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

■ This action does not raise the *Marathon* issue. The State law claim in *Marathon* was based on "a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court." *Northern Pipeline Constr. Co. v. Marathon Pipeline Co., supra,* 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added). Although some of the facts supporting Trustee's Bad Faith claim arose pre-petition, Trustee's Bad Faith action against Defendants is not independent of Kelton's bankruptcy case. Specifically, Defendants' alleged continuous pre-petition and post-petition misconduct Defendants leveled against Kelton and others connected with Kelton for the purpose of putting Kelton and the others out of business which cumulated in Defendants' improper and bad faith filing of an involuntary petition against Kelton and post-petition State Court actions against Kelton, its principles and those related to Kelton. *See e.g., Basin Electric Power Cooperative v. Midwest Processing Company,* 61 B.R. 129 (D.N.D. 1986) (denied motion to withdraw the bankruptcy court's reference to determine debtor's § 303(i) action). Thus, Trustee's Bad Faith action is core because it arises as a direct result of the involuntary bankruptcy filing against a debtor and is alleged to have been integral to Defendants' plan to put Kelton out of business. Assuming *arguendo,* Trustee's allegations are true for the purposes of the Rule 12(b)(1) motion, we will not tolerate the use of the Bankruptcy Code as a means to accomplish such ends. The very integrity of the judicial process is at stake and warrants strict scrutiny of Defendants' pre and post-petition conduct as "matters concerning the administration of the estate," 28 U.S.C.

§ 157(b)(2)(A). We are hard pressed to conceive of a matter that could be more core. Moreover, the end result of our inquiry may very well require "the adjustment of the debtor-creditor ... relationship...." 28 U.S.C. § 157(b)(2)(O).

Thus, we have subject matter jurisdiction over Trustee's action for Bad Faith filing of an 11 U.S.C. § 303 involuntary petition, and determine it is a core proceeding because it arises within a Title 11 bankruptcy case and is essential to the proper and complete administration of Kelton's Bankruptcy Estate. 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 157(b)(2)(O).

■ Assuming *arguendo,* Trustee's Bad Faith action against Defendants was non-core, it is at the very least related to Kelton's bankruptcy within the meaning of *Turner* and *Pacor, supra,* and, of course, well within our subject matter jurisdiction. Moreover, it should not be forgotten Defendants filed the involuntary petition against Kelton and consented to the entry of an order for relief of a voluntary Chapter 11 petition by Kelton. Thus, assuming *arguendo* this proceeding was non-core related, we think it is too late in the proceeding for Defendants to complain of the exercise of our subject matter jurisdiction or the entry of a final order on this proceeding.

Moreover and aside from the fact Defendants expressly invoked the Bankruptcy Court's jurisdiction by filing an involuntary petition against Kelton, we still find the exercise of our subject matter jurisdiction and core determination to be appropriate here because, unlike the defendants in *Marathon,* USAC and Dartmouth filled proof of claims in Kelton's voluntary Chapter 7 Bankruptcy Case. All Trustee has to do is simply amend its Amended Complaint to join an objection to USAC's and Dartmouth's proof of claims, or, alternatively, object to their proof of claims and a file a new adversary proceeding with the same or similar counts. Rules of Bankruptcy Practice and Procedure Rule 3007 [16] and 7001.[17]

---

16. Rules of Bankruptcy Practice and Procedure Rule 3007, **Objections to Claims,** provides: An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon

shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing.

We do not see any prohibition on Trustee's ability to request such an amendment in this proceeding to add an objection to USAC's and Dartmouth's proof of claim and conclude that USAC and Dartmouth have submitted to this Court's equitable jurisdiction to determine its claim. *See, Grandfinanciera, S.A. v. Nordberg*, 492 U.S. 33, ——, n. 14, 109 S.Ct. 2782, 2799, n. 14, 106 L.Ed.2d 26, 52, n. 14, 19 BCD 493, 20 CBC.2d 1216 (1989); *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1389–90, 20 BCD 145 (2d Cir.1990).

Moreover, again, assuming *arguendo*, if we were determine this proceeding over Trustee's Bad Faith action was non-core related, we think Defendants' actions in filing the involuntary petition, their consent to the entry of the Order for Relief of the Chapter 11 petition, together with USAC's and Dartmouth's filing a proof of claim provides us with a proper proceeding for a finding that Defendants consented to the entry of a final judgment.

### 2. Sufficiency of Trustee's Bad Faith Action.

F.R.Civ.P. Rule 12(b)(6) is made applicable to this proceeding by Rules of Practice and Procedure in Bankruptcy Rule 7012. F.R.Civ.P. 12(b)(6), **Defenses and Objections–When and How Presented–By Pleading or Motion–Motion For Judgment on Pleadings**, provides in pertinent parts:

(b) **How Presented.** Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted ...

(h) **Waiver or Preservation of Certain Defenses.**

. . . . .

(2) A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment o the pleadings, or at the trial on the merits.

■ A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted may be decided only after finding subject matter jurisdiction because to rule on the validity of a claim is in itself an exercise of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ The purpose of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). This Court will deny the motion unless it appears to a certainty that a plaintiff is entitled to no relief under any state of facts which could be proved consistent in support of the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748

If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

**17.** Rules of Bankruptcy Practice and Procedure Rule 7001, **Scope of Rules of Part VII**, provides:

An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002, (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), (3) to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property, (4) to object to or revoke a discharge, (5) to revoke an order of confirmation of a chapter 11 or chapter 13 plan, (6) to determine the dischargeability of a debt, (7) to obtain an injunction or other equitable relief, (8) to subordinate any allowed claim or interest, except when subordination is provided in a chapter 9, 11, or 13 plan, (9) to obtain a declaratory judgment relating to any of the foregoing, or (10) to determine a claim or cause of action removed pursuant to 28 U.S.C. § 1452.

F.2d 774, 779 (2d Cir.1984). In other words, Defendants must show beyond doubt Trustee can prove no set of facts in support of its Bad Faith claim which would entitle it to relief. *Bishop v. Stoneman,* 508 F.2d 1224 (2d Cir.1974). A Court will not be influenced by the mere possibility that ultimate recovery is remote or tenuous. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When testing for legal sufficiency, facts for the Court's consideration are limited to those which may be gleaned from the four corners of the complaint, or to statements or documents attached as exhibits or clearly incorporated by reference in the pleadings. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). Finally, this Court, for dismissal purposes, will accept as admitted the well-pleaded material allegations of the complaint. *Bicknell v. Vergennes Union High School Bd. of Directors,* 475 F.Supp. 615, 617 (D.Vt.1979) *aff'd on other grounds* 638 F.2d 438 (2d Cir.1980).

"If the court considers matters outside of the complaint, it must treat the motion as one for summary judgment and proceed under Fed.R.Civ.P. 56, giving the party opposing the motion notice, an opportunity to submit pertinent material and, if need be, conduct discovery."

*Ryder Energy Distribution v. Merrill Lynch Commod.,* 748 F.2d 774, 779 (2d Cir.1984). *Accord, Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

11 U.S.C. § 303(i), **involuntary cases,** provides:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

*Id.*[18]

■■■ Thus, the material conditions under the plain meaning of § 303(i) are: 1) the court dismissed the involuntary petition; 2) the dismissal must be other than on consent of all petitioners and the debtor; and, 3) debtor did not waive the right to judgment under this subsection.

Aside from plain meaning of § 303(i) that the Bankruptcy Court has discretion to grant judgment under § 303(i) if the other conditions under that subsection have been met, it has long been held in this Circuit that the Bankruptcy Court has discretion to award damages for a dismissed involuntary proceeding. *In re Charles W. Aschenbach Co.,* 183 F. 305, 306 (2d Cir.1910).

■■■ Generally, a dismissal of the involuntary petition is a condition precedent to a bad faith action for damages under § 303(i). *See e.g., Miyao v. Kuntz (In re Sweet Transfer & Storage, Inc.),* 896 F.2d 1189, 1191, 20 BCD 274 (9th Cir.1990) ("Any actual claim brought for damages is premature prior to dismissal of the petition."); *Susman v. Schmid (In re Reid),* 854 F.2d 156, 159 (7th Cir.1988); *Bankers Trust Company BT Service Company v. Nordbrock (In re Nordbrock),* 772 F.2d 397

---

**18.** The Legislative History for § 303(i) provides:
Subsection (i) permits the court to award costs, reasonable attorneys' fees, or damages if an involuntary petition is dismissed other than by consent of all petitioning creditors and the debtor. The damages that the court may award are those that may be caused by the taking of possession of the debtor's property under subsection (g) or section 1104 of the bankruptcy code. In addition, if a petitioning creditor filed the petition in bad faith, the court may award the debtor any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on. 'Or' is not exclusive in this paragraph. The court may grant any or all of the damages provided for under the provision. Dismissal in the best interests of creditors under section 305(a)(1) would not give rise to a damages claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5820, 6280.

(8th Cir.1985); *Semel v. Dill (In re Dill)*, 731 F.2d 629, 632, 10 CBC.2d 1119 (9th Cir.1984); *Bradner v. Cooper School of Art, Inc. (In re Cooper School of Art, Inc.)*, 709 F.2d 1104, 1105–1106, 10 BCD 971 (6th Cir.1983); *In re Anderson*, 95 B.R. 703, 704 (Bkrtcy.W.D.Mo.1989); *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492, 494 (Bkrtcy.S.D.N.Y.1985).

 In the proceeding *sub judice*, it does not necessarily follow, as argued by Defendants, that we must dismiss Trustee's Bad Faith action under Rule 12(b)(6) because there was no separate adjudication of a dismissal of the involuntary petition before the entry of Kelton's voluntary Chapter 11 Order for Relief. Trustee has represented to us that prior to the entry of the voluntary Chapter 11 Order for Relief, Kelton's attorney expressly reserved in Open Court its right to pursue Defendants for damages caused by Defendants' filing the involuntary petition.

In *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 17 BCD 599, 18 CBC.2d 838 (3d Cir.1988), an involuntary Chapter 7 petition was filed and debtor countered by filing a Chapter 11 petition. After completing its Chapter 11 case, debtor filed a complaint in the District Court against the involuntary petitioners for bad faith under § 303(i). The Third Circuit held debtor did not waive its right to pursue its bad faith claim by failing to contest the Chapter 7 petition when it countered by filing a Chapter 11 petition because its memorandum expressed an intent to pursue its bad faith claim and because it had requested that the involuntary proceeding be stayed. *Id.*, 842 F.2d at 51–52. *See also, Captran Creditors Trust v. North American Title Insurance Agency (In re Captran Creditors Trust)*, 84 B.R. 812, 814 (Bkrtcy.M.D.Fla.1988) (Parties understood debtor would pursue its bad faith claim despite the actual dismissal of the involuntary petition where they agreed the involuntary would be treated as a voluntary with the entry of the order for relief to commence on the date the involuntary was filed). We hold the Trustee has not lost the Estate's right to pursue a Bad Faith claim because there has not been an intentional relinquishment of a known right and the right to sue on the Bad Faith action for damages was expressly reserved in open Court.

Bankruptcy Judge David Scholl in *In re International Mobile Advertising Corp.*, 117 B.R. 154 (Bkrtcy.E.D.Pa.1990), held its Court ordered reservation of a debtor's right to pursue § 303(i) damages operated as a non-waiver of debtor's right to a judgment under § 303(i). Bankruptcy Judge Scholl *sua sponte* dismissed debtor's § 303(i) bad faith action after trial on the merits; however, for lack of "statutory jurisdiction" because, in his view, § 303(i) also requires the absent of consent to a dismissal of the involuntary petition, and consent was given by the parties to the dismissal of the involuntary. After dismissing the § 303(i) claim, the Court in *International Mobile Advertising Corp.*, proceeded to analyze whether the filing of the involuntary petition transgressed Rule 9011.

While we agree with *International Mobile Advertising Corp.*'s interpretation that there are three condition precedents under § 303(i); namely, dismissal of the involuntary petition, the dismissal was entered "other than on consent" of the parties, and non-waiver by debtor of its right to a § 303(i) judgment, we quarrel with that Court's refusal to address whether the debtor's express non-waiver of a right to a judgment under § 303(i) does not also qualify the consent of the parties to the dismissal of the involuntary petition in the first place. After all, what good is the parties' express reservation of a debtor's right to a judgment under § 303(i) if, by the parties giving consent to the dismissal of the involuntary petition simultaneously with the non-waiver of judgment, the debtor would lose its right to that very judgment? As a practical matter in the proceeding *sub judice*, if Kelton had understood its express non-waiver of its right to a judgment under § 303(i) might not also qualify its consent to the entry of a dismissal of the involuntary petition, then it is likely Kelton would not have consented to the dismissal of the involuntary petition. The preservation of a

right to a judgment subsumes any consent, thus, we hold Kelton's reservation of right to a § 303(i) judgment necessarily qualified Kelton's consent to the dismissal of the involuntary petition in the first place and survives a Rule 12(b)(6) dismissal.

### 3. Rule 9(b) and Rule 8(a)(2).

Rules of Bankruptcy Practice and Procedure Rule 7009(b) incorporates Federal Rules of Civil Procedure Rule 9(b). F.R. Civ.P. 9(b) states:

> **(b) Fraud, Mistake, Condition of Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

A complainant, seeking the aid of a court of chancery under such circumstances, must state the particular act of fraud, misrepresentation, or concealment,—must specify how, when, and in what manner, it was perpetrated. The charges must be definite and reasonably certain, capable of proof, and clearly proved. *Stearns v. Page*, 48 U.S. (7 How.) 819, 829, 12 L.Ed. 928, 933 (1849).

■■■■ F.R.Civ.P. 9(b) is "an exception to the generally liberal scope of pleadings allowed by Rule 8, F.R.Civ.P." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). Specifically, the pleader must plead the time, place, and content of the fraudulent transaction, but need not plead the evidence from which fraudulent intent could be inferred. *See e.g., Denney v. Barber*, 576 F.2d 465, 469 (2d Cir.1978); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985). Malice, intent, knowledge, and other conditions of mind of a person may be averred generally. *See Vincent DiVittorio v. Equidyne Extractive Industries, Inc., et al.*, 822 F.2d 1242 (2d Cir.1987).

In *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir.1982) the Second Circuit stated:

> Plaintiff need only allege the existence of facts and circumstances sufficient to warrant the pleaded conclusion that

fraud had occurred. In so doing, the plaintiff's attorneys would be stating 'the circumstances constituting fraud … with particularity' as required by [F.R. Civ.P.] Rule 9(b).

*Decker v. Massey-Ferguson, Ltd., supra*, 681 F.2d at 119 (2d Cir.1982).

■■■■ This Court will insist upon the stringent standards set by the Courts in *Stearns, Decker, supra*, where a party to alleged fraudulent transaction has first hand knowledge of such fraud, except as to "matters peculiarly within the opposing party's knowledge," *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Huntington National Bank v. Schwartzman (In the Matter of Schwartzman)*, 63 B.R. 348, 355 (Bkrtcy.S.D.Ohio 1986), and except where a trustee, a third party outsider to the fraudulent transaction, must rely on second hand knowledge. *Hassett v. Zimmerman, (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199, 203, 10 BCD 1204 (Bkrtcy.S.D.N.Y. 1983) (dismissed trustee's original complaint for lack of F.R.Civ.P. 9(b) specificity, however, trustee, a third party outsider to the fraudulent transfer, was allowed to amend complaint and replead fraud because of necessary reliance on second hand information). Trustees in bankruptcy must plead with particularity facts giving rise to their fraud actions when they have "extensive access to records and files of the bankrupt corporation." *Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir.1970). Even where opposing party has sole knowledge, or where trustee is a third party outsider, the allegations must nevertheless be accompanied by a statement of the facts upon which relief is founded. *Decker v. Massey-Ferguson, Ltd., supra*, 681 F.2d at 120 (2d Cir.1982); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972).

Rules of Bankruptcy Practice and Procedure Rule 7008(a) makes F.R.Civ.P. Rule 8 applicable to adversary proceedings. Rule 7008 provides:

> (a) APPLICABILITY OF RULE 8 F.R. CIV.P. Rule 8 F.R.Civ.P. applies in ad-

versary proceedings. The allegation of jurisdiction required by Rule 8(a) shall also contain a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates and to the district and division where the case under the Code is pending. In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge.

(b) ATTORNEY'S FEES. A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate.

COMMITTEE NOTE

Proceedings before a bankruptcy judge are either core or non-core. 28 U.S.C. § 157. A bankruptcy judge may enter a final order or judgment in a core proceeding. In a non-core proceeding, absent consent of the parties, the bankruptcy judge may not enter a final order or judgment but may only submit proposed findings of fact and conclusions of law to the district judge who will enter the final order or judgment. 28 U.S.C. § 157(c)(1). The amendment to subdivision (a) of this rule requires an allegation as to whether a proceeding is core or non-core. A party who alleges that the proceeding is non-core shall state whether the party does or does not consent to the entry of a final order or judgment by the bankruptcy judge. Failure to include the statement of consent does not constitute consent. Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding. Amendments to Rule 7012 require that the defendant admit or deny the allegation as to whether the proceeding is core or non-core.

F.R.Civ.P. 8(a) sets forth three basic requirements for a complaint: 1) a statement of the Court's jurisdiction;[19] 2) a short and plain statement of the claim showing that the pleader is entitled to relief; and, 3) a demand for relief. *See, Carter v. Larkham, (In re Larkham)*, 31 B.R. 273, 275, 10 BCD 1093 (Bkrtcy.D.Vt. 1983). A generalized summary of the claims is usually sufficient to afford notice to opposing parties. *Friedlander v. Cimino, M.D.*, 520 F.2d 318 (2d Cir.1975); *Vermont Real Estate Investment Trust v. Crowell, (In re Vermont Real Estate Inv. Trust)*, 21 B.R. 744, 746 (Bkrtcy.D.Vt.1982).

The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and instead forward the principal that the purpose of pleading is to aid in gaining a decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

F.R.Civ.P. 8(a)(2) requires: "[T]he pleader to disclose adequate information as the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it." *Nagler v. Admiral Corporation*, 248 F.2d 319 (2d Cir.1957), *citing Report of Proposed Amendments*, October 1955, pp. 18, 19, and *Preliminary Draft*, May 1954, pp. 8, 9, Advisory Committee explanatory note of F.R.Civ.P. Rule 8(a)(2). Mere conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss and we are not bound to accept them as true. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209, 232 (1986); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd on other grounds*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

With the forgoing rules in mind and in keeping our review of the factual allegations in the light most favorable for Trustee, *Scheur v. Rhodes*, 416 U.S. 232,

---

**19.** See Rules of Bankruptcy Practice and Procedure Rule 7008 which also directs: "The allegation of jurisdiction required by Rule 8(a) shall also contain a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates and to the district and division where the case under the Code is pending."

94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), Trustee's Bad Faith action reveals enough factual allegations to survive a Rule 9(b) and Rule 8(a)(2) attack.

We think Trustee alleged more than enough facts to clue Defendants into the nature of the allegations against them. Assuming *arguendo,* Trustee's amended complaint fails to particularize its fraud allegations, a dismissal is not warranted. The exception to Rule 9 that is applicable here is the third party Trustee is not in possession of all of the facts giving rise to the allegations of bad faith, rather, the supporting facts and documentation are in the possession of Defendants.

Moreover, assuming *arguendo* Trustee's Bad Faith action was subject to a Rule 9(b) or Rule 8 objection, its dismissal would be with leave to amend. Complaints that are dismissed under F.R.Civ.P. Rules 8, 9(b), and 12(b)(6) are "almost always" dismissed with leave to amend. *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) *citing,* 2A J. Moore & J. Lucas, *Moore's Federal Practice,* paragraph 9.03 at 9–34 (2d Ed.1986). It has been held that a dismissal without leave to amend might constitute an abuse of discretion, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962), and:

> [T]he relevant matters for the trial court to consider are such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and the utility of the amendment.

*Ford Motor Credit Company v. Gallaudet, (In re Gallaudet),* 40 B.R. 828, 830 (Bkrtcy.D.Vt.1984). It is normally our policy to allow amendments to complaints liberally, provided the opposing party is not prejudiced by them. Defendants have not demonstrated such prejudice here. There has been no such undue delay or dilatory motive on behalf of Trustee. All delays were the result of continuances granted by the Court and we will not review the merits of those continuances here. Suffice it to say, we think Defendants, notwithstanding their protestation to the contrary, have a very good understanding of the nature of Trustee's Bad Faith cause of action.

Given the circumstances of the absence of prejudice, the nature of Trustee's causes of action, the probability that the detailed facts are in Defendants' camp, we deny Defendants' Rule 8 and Rule 9(b) motions to dismiss. Defendants are to answer, and Trustee is given an opportunity to engage in open and robust discovery to ferret out the factual details in Defendants' possession.

**B. Count II Equitable Subordination.**

We have subject matter jurisdiction over Trustee's 11 U.S.C. § 510(c) Equitable Subordination action and determine it is a core proceeding because it can only arise within a Title 11 bankruptcy case and is essential to the proper and complete administration of Kelton's Bankruptcy Estate. 28 U.S.C. §§ 157(b)(2)(A); (K); and/or (O).

Despite the pre-Bankruptcy Code's absence of express provisions authorizing the equitable subordination of claims, it was well settled by Bankruptcy Act case law that Bankruptcy Courts possess equitable power to subordinate not only claims or interests but also relationships among creditors *vis a vis* their debtor:

> The power of the bankruptcy court to subordinate claims or adjudicate equities arising out of the *relationship* between the several creditors is complete.

*Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293, 1298 (1941) *reh'g denied,* 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552 (1941) (citations omitted) (emphasis supplied). *See e.g., Taylor v. Standard Gas & Elec. Co., supra,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *Pepper v. Litton, supra,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281, 289 (1939).

Section 510(c) of the Bankruptcy Code provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing,[20] the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

Section 510(c) is a codification of the Bankruptcy Court's pre-Code equitable power to subordinate claims, interests, or relationships and to adjudicate equities among creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977) U.S.Code Cong. & Admin.News, pp. 5787, 6315. Rather than specify the criteria to be used by Bankruptcy Courts in subordinating claims under § 510(c), Congress intended Bankruptcy Courts to be governed by judicially created principles of equitable subordination. S.Rep. No. 989, 95th Cong., 2d Sess. 74 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5860; 124 Cong.Rec.S. 17,-412 (Oct. 6, 1978); 124 Cong.Rec.H. 11,095 (September 28, 1978) (Statement of Rep. Edwards). *See, e.g., Wilson v. Huffman (In re Missionary Baptist Foundation of America Inc.)*, 818 F.2d 1135, 1142, 16 CBC.2d 1461 (5th Cir.1987).

In *Benjamin v. Diamond (Matter of Mobile Steel Co.)*, 563 F.2d 692, 3 BCD 1170 (5th Cir.1977), the Fifth Circuit extracted from existing case law three conditions that must be fulfilled before a Bankruptcy Court may exercise its power of equitable subordination:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt

or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Id.*, 563 F.2d at 700 (citations omitted).

As explained by the Fifth Circuit in *Wilson v. Huffman (In re Missionary Baptist Foundation of America Inc.), supra,* 818 F.2d at 1143 (5th Cir.1987), and as *Mobile Steel, supra,* noted, three principles should be kept in mind in determining whether the three conditions have been met:

First, inequitable conduct directed against the debtor or its creditors may be sufficient to warrant the subordination of the claim irrespective of whether the conduct was related to the acquisition or assertion of that claim.

Second, "claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct."

Third, with respect to the allocation of the burden of proof, a claim filed under section 501 of the Bankruptcy Code enjoys prima facie validity which may be overcome by the trustee's presentation of evidence.

*Wilson v. Huffman (In re Missionary Baptist Foundation of America Inc.), supra,* 818 F.2d at 1143 (5th Cir.1987) (citations omitted).

Rules of Bankruptcy Practice and Procedure Rule 3001(f)[21] apparently allocates the burden of proof of the elements for equitable subordination on the party seeking subordination because there is a presumption of the validity of the proof of claim. The question before us is what kind of allegation or evidence is necessary to overcome this presumption to survive a Rule 12(b)(6) motion?

■ Contrary to the position advanced by Dartmouth and USAC, their claim may

---

**20.** Initially, we note that Section 510(c) of the Bankruptcy Code requires "notice and a hearing" before the Court may exercise its powers of equitable subordination of a "claim" or "interest." 11 U.S.C. § 510(c)(1).

**21.** Rules of Bankruptcy Practice and Procedure Rule 3001(f), **Proof of Claim,** provides:

(f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

be subordinated under § 510(c) in the absence of fraud. The standards governing the application of the doctrine are to be determined from the facts on a case by case basis.

One view is the type of conduct that will trigger § 510(c) depends on the type of relationship, *i.e.*, more egregious conduct is required as the relationship becomes more distant. Typically, the claimant owes a fiduciary obligation to the debtor, a special relationship which requires less evidence of wrongful conduct to sustain the movant's burden of proof. *See, Pepper v. Litton, supra,* 308 U.S. at 307, 60 S.Ct. at 245, 84 L.Ed. at 289 (1939). In the absence of a special relationship, more evidence of wrongful conduct is required to sustain the § 510(c) claimant's burden of proof. *Anaconda–Ericsson, Inc. v. Hessen (In the Matter of Teltronics Services, Inc.),* 29 B.R. 139, 169 (Bkrtcy.E.D.N.Y.1983).

As a general rule lenders are not fiduciaries when it comes to collection on their claims. *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 609 (2d Cir.1983) *cert. den. sub. nom., Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). Lenders may exercise their rights under contract, call a loan when due under the terms of the contract, refuse extension of credit, and lawfully enforce collection without fear of wrongful conduct. *Id.,* 699 F.2d at 610 *citing, Weinberger v. Kendrick,* 698 F.2d 61, 78 (2d Cir.1982). One exception to the general rule may occur where lender exerts dominion and control over its borrower and substitutes its judgment for that of the corporate borrower, in effect, usurps borrowers' fiduciary obligations for the purpose of protecting the lender's position to the detriment of the borrower and its other creditors. *See, Smith v. Associates Commercial Corp. (In the Matter of Clark Pipe & Supply Co., Inc.),* 870 F.2d 1022, 1029–30, 20 CBC.2d 1571, 19 BCD 558 (5th Cir.1989); *Badger Freightways, Inc. v. Continental Illinois National Bank and Trust Company of Chicago (In re Badger Freightways, Inc.),* 106 B.R. 971, 977, 19 BCD 1673, 22 CBC.2d 174 (Bkrtcy.N.D.Ill.1989).

While Trustee does not expressly allege Defendants are fiduciaries, Trustee's Equitable Subordination claim, cast in a light most favorable to it, contains allegations of the type of dominion, control, interference with prospective contractual relations, and substitution of judgment that may very well elevate Defendants from mere lenders and competitors to fiduciaries and thereby require less stringent factual allegations or evidence of wrong doing.

Aside from a potential fiduciary relationship standard connection, Trustee alleges, *inter alia,* Defendants engaged in inequitable conduct designed to encourage Kelton to over-extend its credit to achieve the goal of the destruction and liquidation of Kelton's business for the purpose conferring an unfair advantage on Defendants, all to the injury of Kelton and Kelton's creditors. Thus, under either a fiduciary relationship or a normal lender-borrower relationship, Trustee's Equitable Subordination count sufficiently alleges the elements of § 510(c); namely, inequitable conduct and injury to Kelton and its creditors, and survives Defendants' Rule 12(b)(6) and Rule 9(b) motions to dismiss.

Assuming *arguendo,* the Trustee's allegations were insufficient to put Defendants on notice of the nature of Trustee's claims, a conforming amendment is appropriate after Defendants have interposed their answer and discovery has taken place, rather than dismissal, because Plaintiff is a Bankruptcy Trustee and a third party to the alleged facts giving rise to its § 510(c) action and because the supporting material facts and documents may be in possession of Defendants.

As a further ground warranting denial of Defendants Rule 12(b)(6) and Rule 9(b) motions, there is now an emerging and respectable view that the Court may, in appropriate circumstances, invoke § 510(c) equitable subordination of a creditor's claim without any proof of inequitable conduct. *United States v. Virtual Networks Services Corporation (In the Matter of Virtual Networks Services Corporation),* 902 F.2d 1246, 20 BCD 816, 818 (7th Cir.

1990). Whether this view is applicable here will await trial.

### c. Count III Violation of Automatic Stay.

 We have subject matter jurisdiction over Trustee's 11 U.S.C. § 362 violation of the Automatic Stay action and determine it is a core proceeding because it arises within a Title 11 bankruptcy case and is essential to the proper and complete administration of Kelton's Bankruptcy Estate. 28 U.S.C. § 157(b)(2)(A); § 157(b)(2)(G); and, 28 U.S.C. § 157(b)(2)(O).

11 U.S.C. § 362(a)(1), *Automatic stay*, provides in pertinent parts:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Section 362(a)(1) provides the debtor with "a breathing spell from his creditors," S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5840–41, for the purpose of permitting the debtor a chance to organize its economic affairs.

 There is no doubt in this Court's mind that Trustee's allegation that USAC filed a State Court lawsuit against Kelton after it and the other Defendants had filed an involuntary petition against Kelton is, without more, enough to survive Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim of a violation of § 362 upon which relief may be granted. We categorically reject USAC's and Defendants' attempt to salvage their Rule 12(b)(6) dismissal motion by USAC's self-serving representation of harmless error on the theory that all they did was to simply name Kelton in the State Court action and proceeded to litigate against the Kelton's related entities, principals, shareholders, directors, agents, officers and/or employees whom were not in bankruptcy. Indeed, given USAC's admission of their post-petition State Court filing against Kelton, we are hard pressed not to enter summary judgment for Trustee against USAC on the liability issue and leave damages under 11 U.S.C. § 362(h) for trial.

Lastly, we address Defendants' Rule 12(b)(6) motion to dismiss that part of Trustee's Count III which raises the issue of Trustee's theory that § 362 applies to non-debtors to prohibit Defendants from conducting post-petition State Court lawsuit and discovery therein against Kelton's related entities, principles, shareholders, directors, agents, officers and/or employees without first obtaining relief from stay.[22] Moreover, Trustee says Defendants' State Court action against Kelton and others related to Kelton is not only evidence of a willful violation of the automatic stay, but is further evidence of Defendants' bad faith to divide and conquer Kelton.

 While the filing of a bankruptcy petition[23] enjoins litigation against a bank-

**22.** Trustee also alleged that we had issued a Bench Order that no discovery was to be had of Kelton or others related to Kelton until after Kelton's 11 U.S.C. § 341 first meeting of creditors. Defendants' representation confirms our recollection that Defendants were not a party to that hearing or Bench Order. With due process and Defendants' representations in mind, we ignore the allegation of a violation of the Bench Order unless Trustee is able to show us otherwise. Moreover, given our disposition of Defendants' Rule 12(b)(6) motion *infra,* and the sufficiency of the remaining factual allegations in support of Trustee's Automatic Stay Count III, the alleged violation of such a Bench Order is not necessary to sustain Trustee's Count III action for violation of the Automatic Stay.

**23.** Other than a Chapter 13 petition where it expressly stays creditors from commencing or continuing any civil action to collect on a consumer debt. 11 U.S.C. § 1301. *See e.g., Royal Truck & Trailer v. Armadora Maritima Salvadorena,* 10 B.R. 488, 491 (Bkrtcy.N.D.Ill.1981) (contrasting the congressional purposes behind Chapter 13 and Chapter 11).

rupt debtor, it does not, as a general rule, stop litigation against non-debtors although they are in some way connected with the bankrupt, such as joint tortfeasors, insurers, sureties, co-obligor, guarantors, officers of the debtor, and related companies. *See e.g., Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65, 15 CBC.2d 952 (2d Cir.1986) (Stay applied to partnership's appeal from an adverse decision on action based on breach of loan commitment agreement in which partnership was named as defendant; however, Bankruptcy Court could not extend stay to non-bankrupt partners named as co-defendants in proceedings against partnership that had filed Chapter 11 petition, even though stay on those actions would be automatically extended to partnership, because non-debtors' efforts to come within the stay were made in bad faith to escape from the liability imposed by an adverse district court judgment); *O'Malley Lumber Company v. Lockard (In the Matter of Lockard)*, 884 F.2d 1171, 1179, 19 BCD 1244 (9th Cir.1989) (stay did not apply to a creditor's state court lawsuit on bankrupt contractor's license bond because surety obligations are independent and primary, not derivative of those of the bankrupt contractor); *Pharmacy Accounting Management, Inc. v. Foxmeyer TBL, Inc.*, 875 F.2d 665, 668 (8th Cir.1989) *cert. denied* —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 832 (1989) (stay did not apply to tortious interference claim of customer whom bought computer system and maintenance agreement against bankrupt seller's asset purchaser); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1329–30 (10th Cir.1984) (architect's bankruptcy did not stay shopping center buyers action against developer/seller); *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 314, 10 BCD 131 (7th Cir.1983) *(per curiam)* (stay does not apply to defendants manufacturers and distributors of asbestos products although a co-defendant filed bankruptcy); *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97, 10BCD 1282, 8 CBC.2d 1301 (6th Cir.1983) (stay could not be invoked by solvent codefendants of a Chapter 11 debtors in a product liability action); *Williford*

*v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126, 11 BCD 642, 10 CBC.2d 569 (4th Cir.1983) (non-debtor defendants could not avail themselves of bankrupt debtors stay); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 4–5 (1st Cir.1983) *cert. denied* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *In re Crazy Eddie Securities Litigation*, 104 B.R. 582, 584, 19 BCD 1340 (E.D.N.Y.1989) (stay did not preclude action against co-defendants of bankrupt debtor because debtor and co-defendants were not bound by statute or contract to the extent that liability of co-defendants would be imputed to debtor by operation of law); *Greene & Kellogg, Inc. v. Oxford Hospital, Inc.*, 95 B.R. 26 (E.D.Pa.1989) (District Court held it was not precluded from continuing its determination of a summary judgment motion brought by hospital against solvent co-defendant who was alleged to be a parent company of a bankrupt debtor); *Royal Truck & Trailer v. Armadora Maritima Salvadorena*, 10 B.R. 488, 491 (Bkrtcy.N.D.Ill.1981) (contrasting the congressional purposes behind Chapter 13 and Chapter 11 to conclude the absence of a provision similar to Chapter 13 in Chapter 11 is further evidence of Congressional intent that the automatic stay is to apply only to bankruptcy debtors).

Recent cases, however, show that Courts have been willing to extend § 362 to include certain types of actions by or against non-debtors when such actions have a significant impact on the bankrupt, its ability to reorganize, or involves property of the estate. *See, e.g., Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101, 20 BCD 807, 22 CBC.2d 1385 (2d Cir.1990) (Stay prevented oil supplier from suing a buyer when broker's bankruptcy trustee had a pending adversary proceeding against the buyer for missing oil); *MacArthur Company v. Johns–Manville Corporation*, 837 F.2d 89, 92–93 (2d Cir.1988) (Bankruptcy Court had authority to enjoin suits against bankrupt's insurers); *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In the Matter of S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153 (5th Cir.

1987) (stay applies to prevent interrogatories on officers of company affiliated bankrupt debtor); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986) *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (stay applies to insurers and to additional insured under usual circumstances where there was "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.). See also,* G.H. Ishii-Chang, *Litigation and Bankruptcy: The Dilemma of the Codefendant Stay,* 63 American Bankruptcy Law Journal 257 (Summer 1989).

■ In the instant proceeding, it may very well be as Trustee has alleged that USAC's State Court lawsuit and conducting discovery against Kelton's corporate directors, shareholders, officers and key employees without seeking leave of this Court was calculated to and did interfere with Kelton's ability to reorganize as part of its alleged bad faith scheme to put Kelton out of business so, *inter alia,* one of the Defendants, a competitor of Kelton's would gain Kelton's market share. As can be seen from the above cases, the issue of whether § 362 extends to such actions is very fact intensive, and, in any event, does not lend itself to a Rule 12(b)(6) motion. Instead, Defendants must interpose their answer, discovery and a trial on the merits must be had to determine whether the stay has been violated.

## CONCLUSION

This Court has Subject matter jurisdiction over Trustee's Amended Complaint for Bad Faith filing by Defendants of Kelton's involuntary petition, 11 U.S.C. § 510(c) Equitable Subordination, and, violation· of 11 U.S.C. § 362 Automatic Stay under 28 U.S.C. § 1334(b) and the general reference to this Court under VLBR 7012, Part V of the District Court Rules for the District of Vermont. Trustee's actions are core matters concerning the administration of Kelton's estate under 28 U.S.C. §§ 157(b)(2)(A); (G); (K); and (O).

Assuming *arguendo,* Trustee's Bad Faith action against Defendants was non-core, they are, at the very least, related to Kelton's bankruptcy over which we may exercise our subject matter jurisdiction. Again assuming arguendo the Bad Faith action was non-core related, it is appropriate to enter a final order absent express consent because Defendants inter alia, filed the involuntary petition against Kelton, agreed to the entry of an order for relief of Kelton's voluntary Chapter 11 petition, and, USAC and Dartmouth filled proof of claims in Kelton's voluntary Chapter 7 Bankruptcy Case.

We deny Defendants' motion to dismiss Trustee's Bad Faith action for failure to state a claim upon which relief may be granted under Rule 12(b)(6), because Kelton expressly reserved in Open Court its right to sue for damages for a wrongful filing of the involuntary petition and the consent to the dismissal of the involuntary petition was qualified by the reservation. We also deny Defendants' motion to dismiss Trustee's Bad Faith action under F.R. Civ.P. Rules 8(a)(2) and/or 9(b), because Trustee is a third party and the material facts and documents, if any, are in control of Defendants who are in the best position to know of such facts.

Trustee's Equitable Subordination under 11 U.S.C. § 510(c) states a claim upon which relief may be granted under F.R. Civ.P. Rule 12(b)(6). Equitable subordination does not require fraud, and may not even require inequitable wrongdoing, thus, § 510(c) is not subject to the specificity requirements of F.R.Civ.P. Rule 9(b). Even If Rule 9(b) applied, a conforming amendment, rather than dismissal would be appropriate after Defendants have interposed their answer and discovery has taken place, because Plaintiff is a Bankruptcy Trustee and a third party to the alleged facts giving rise to its § 510(c) action and because the supporting material facts and documents may be in possession of Defendants.

Trustee's violation of the Automatic Stay Count certainly survives Defendants' Rule 12(b)(6) motion because it appears § 362 has been violated by USAC's filing a State Court action against Kelton when USAC and USAC's Co–Defendants had already filed an involuntary petition against Kelton. Whether § 362 may have also been violated by Plaintiffs' filing of a State Court action against and/or conducting State Court discovery of Kelton's non-bankrupt principles, employees, and/or relatives depends upon, in part, its impact on Kelton, an issue which requires discovery and remains for trial.

## ORDER DENYING MOTION TO DISMISS

This proceeding having come before us on the motion by Defendants to dismiss Trustee's Amended Complaint in the above referenced proceeding, it is hereby Ordered the motion is denied for the reasons stated in this Court's Memorandum of Decision of even date.